IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-41 |
| | ) | (VARLAN/SHIRLEY) |
| JODY OLIVENT, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court upon Defendant Jody Olivent's Motion To Suppress [Doc. 11], filed on May 3, 2006. The government filed a response to the motion [Doc. 13] on May 17, 2006. The parties came before the Court for a suppression hearing on June 7, 2006. Assistant United States Attorney Tracee Plowell was present representing the government. Attorneys White and Nicholson were present representing Defendant Olivent, who was also present. At the conclusion of the hearing, the Court took the suppression motion and related filings under advisement.

**I. POSITION OF THE PARTIES**

The defendant's Motion to Suppress [Doc. 11] requests the Court to suppress "all evidence obtained from his residence on March 23, 2006 and thereafter." He avers that the warrant obtained to search his residence was issued without probable cause to conduct a search under the

1

Fourth Amendment. The defendant states that on the night of March 23, 2006, ATF Agents arrived at his residence and requested permission to search the same. The defendant refused to grant consent to search. The Agents then secured the defendant's residence and later returned with a search warrant, at which time, they conducted a search of the home and allegedly found certain firearms and other items.

The defendant argues that the search warrant was issued on the basis of information provided by his ex-wife, Johanna Miller. The defendant states that Ms. Miller contacted the ATF on March 23, 2006 and related information provided to her by the parties 8 year-old daughter concerning the Defendant possessing firearms. Specifically, Ms. Miller informed the Agents that her daughter had told her that while she was staying at her father's (Defendant) on March 19, 2006, she saw the defendant put a rifle in the bedroom closet and that he told her to stay out of his room because he keeps guns and dangerous stuff inside. The defendant also states that Ms. Miller informed the Agents that he was a convicted felon and that while she was married to him, he possessed firearms and ammunition. She also informed the Agents that she had not seen the defendant in possession of any firearm since 2004.

The defendant further argues that there is no indication from the affidavit that the Agent interviewed the child and, thus, insufficient steps were taken to corroborate the informant's claim and to establish her veracity. Finally, the defendant argues that the warrant obtained to search the defendant's computer hard drive also violated his Fourth Amendment rights because no probable cause existed based on the information given in the affidavit.

The government responds [Doc. 13] that the search warrant affidavit is sufficient and that the evidence was lawfully obtained. It argues that the same day Ms. Miller contacted the ATF,

2

the Agents interviewed both Ms. Miller and her daughter. During the interview, Ms. Miller informed them that the defendant was a convicted felon and that while she was married to the defendant, she had seen him build, shoot and possess firearms and ammunition. Ms. Miller also informed the Agents that she and the defendant were "in the middle of a custody battle" and shared custody of the children.

The Agents conducted a check of the defendant's criminal history, which confirmed that he was a previously convicted felon. The Agents then went to the defendant's residence to conduct a "knock and talk" and request consent to search the residence. After the defendant refused to give consent, the Agents sought a search warrant. However, prior to making application for the search warrant, the Agents re-interviewed Ms. Miller and her daughter. The Agents also advised Ms. Miller that providing false statements would subject her to prosecution for perjury. Ms. Miller made a sworn statement attesting to the facts [Doc. 13-2].

The government states that the information above, including the sworn statement, was presented to United States Magistrate Judge Guyton in an affidavit for a search warrant on March 23, 2006 and that Magistrate Judge Guyton found probable cause and issued the warrant [Doc. 13-2]. The Agents executed the search warrant that same day. The government further argues that even assuming, *arguendo*, that the search warrant affidavit did not provide sufficient probable cause, the officer relied on the warrant in good faith pursuant to United States v. Leon, 468 U.S. 897 (1984).

Next, on March 30, 2006, ATF Agents specializing in computer forensics sought a warrant to search computers and related electronic equipment seized pursuant to the initial search warrant. Based on information provided by Ms. Miller, who stated that the defendant visited a certain firearm website in her presence, and numerous receipts for the purchase of firearms

3

recovered pursuant to the initial search warrant, Magistrate Judge Guyton found probable cause and issued the warrant on March 30, 2006 [Doc. 13-3].

## II. SEARCH WARRANTS

In determining whether there is probable cause to issue a search warrant, the task of the issuing magistrate is to determine whether, "given all the circumstances set forth in the affidavit, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Shields, 978 F.2d 943, 946 (6th Cir. 1992). Probable cause is present when,

Initially, this Court would note that it sits as a reviewing Court with regard to the review of the two (2) federal search warrants that were issued by United States Magistrate Judge Guyton in this case on March 23, 2006 and March 30, 2006.[1] This review is not a de novo determination of probable cause but rather a determination of whether, under a totality of the circumstances, "the magistrate had a substantial basis for concluding that a 'search would uncover evidence of a wrongdoing.'" United States v. Sonagere, 30 F.3d 51, 53 (quoting Gates, 462 U.S. at 236). Furthermore, a search warrant that has been issued by a Judicial Officer is entitled to "great deference" upon review of the judicial officer's determination of probable cause and should not be reversed unless arbitrarily exercised. United States v. Miller, 314 F.3d 265, 268 (6th Cir. 2002);

---

[1] While the defendant contends that both search warrants are invalid, at the June 7 suppression hearing, defense counsel represented to the Court that the validity of the second search warrant [Doc. 13-3] is contingent upon the validity of the first search warrant [Doc. 13-2]. Thus, counsel argued that if the Court finds that the affidavit in support of the first search warrant lacked a sufficient factual basis to establish probable cause, then the second warrant is also invalid and should be suppressed as "fruit of the poisonous tree." In other words, no argument was specifically made by defense counsel as to the validity of the second search warrant.

4

United States v. Calloway, 116 F.3d 1129, 1132 (6th Cir.), cert. denied, 522 U.S. 925 (1997).

In reviewing the validity of a search warrant, the Court is generally "concerned only with the statements of fact" "contained within the four corners of the underlying affidavit." United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); Whiteley v. Warden, 401 U.S. 560, 565 n.8 (1971); United States v. Smith, 783 F.2d 648, 654 (6th Cir. 1986). But see United States v. Hang Le-Thy Tran, 433 F.3d 472, 482 (6th Cir. 2006) (holding that issuing judge may consider unrecorded but sworn testimony that supplements a duly executed affidavit in determining whether there is probable cause upon which to issue a search warrant); United States v. Shields, 978 F.2d 943, 946 (6th Cir. 1992). "[T]he affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." United States v. Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996). Such facts "need not be based on the direct knowledge and observations of the affiant, but may also come from hearsay information supplied by an informant." Id. (citing Jones v. United States, 362 U.S. 257, 269-70 (1960)). However, "from whatever source, the information presented must be sufficient to allow the official to independently determine probable cause; 'his action cannot be a mere ratification of the bare conclusions of others.'" Id. (quoting Gates, 462 U.S. at 239).

a. *Search Warrant #1*

The affidavit and application for the first search warrant, issued on March 23, 2006, are attached as an exhibit to the government's written response to the defendant's suppression

5

motion [Doc. 13-2].² They were signed by Special Agent Bernard Waggoner as the affiant. On the front page, Special Agent Waggoner states that he has reason to believe that in Maryville, Tennessee, on the property described, that there is now believed to be:

> Firearms, assorted firearms ammunition, records pertaining to the purchase of firearms, and other indicia of firearms ownership, specifically papers and books pertaining to firearms, a personal computer, floppy discs, zip drives, hard drives, CD's, mass media storage devices, including flash drives, capable of holding computer data files; paraphernalia and materials relating to the sale, purchase, acquisition or possession of firearms or ammunition, and items or tools related to the building and/or manufacturing firearms.

The application further states that the above items constitute evidence of the commission of a criminal offense, contraband, the fruits of a crime, and property designed or intended for use or which is or has been used as the means of committing criminal offenses in violation of 18 U.S.C. § 922(g)(1), possession of firearms and ammunition by a convicted felon.

With regard to the facts supporting the search warrant and the alleged establishment of probable cause that a crime has been or is being committed and that the described items are presently located in the described property, the application and affidavit state in full as follows:

> "In the evening of March 23, 2006, Special Agents of the ATF were contacted by Johanna Miller, of an address known to the ATF, who shares custody of her two children with her former husband, Jody Olivent, DOB 9/30/1978, a white male. On March 19, 2006, Ms. Miller's children had scheduled visitation with their father, Jody Olivent at his residence located at 1004 Mynders Road, Maryville, Tennessee 37801. Miller's oldest daughter, Marie Olivent, DOB 7/15/1997 informed Ms. Miller on March 23, 2006, that during her visit on March 19, 2006, she observed her father place a long black rifle into his closet. She further informed that her father instructed her and her younger brother that they were prohibited from entering his bedroom closet as he keeps "guns and dangerous stuff" inside. Ms. Miller informs that Jody Olivent is a convicted felon and that during their marriage, Mr. Olivent

---

² In light of defense counsel's representation that the validity of the second search warrant is contingent upon the validity of the first search warrant, this Court will primarily focus its review upon the first search warrant [Doc. 13-2].

built an AR-15 rifle and the .45 caliber pistol from parts, and possessed a 'tub' of ammunition. Ms. Miller observed Olivent shoot the firearms and saw him in possession of the firearms, most recently in 2004. Ms. Miller provided this information in a sworn statement to ATF Special Agents and was advised that false statements would subject her to a prosecution for perjury.

Jody Olivent has numerous felony convictions, including Felony Evading Arrest and Aggravated Assault in 1997 where he engaged the police in a high speed chase and struck an officer's vehicle with his vehicle; Aggravated Assault in 1998 and Felony Possession of Burglar's Tools in 1996. These convictions occurred in the Criminal/Circuit Court of Blount County, Tennessee. Agents contacted Olivent to discuss the allegations and asked for consent to search the home. Defendant declined to give consent. He admitted to the Agents that he is a convicted felon, but denied possessing any firearms. Defendant is presently operating a green four-door 1996 Jeep Cherokee, Tennessee license plate number RZZ-638 and is the registered owner of a 1974 Jeep CJ-5."

At the suppression hearing, defense counsel argued that there was no indication from the affidavit presented by Agent Waggonor that the Agents interviewed the child and, thus, insufficient steps were taken to corroborate the informant's claim and to establish the daughter's veracity. As a result, defense counsel maintained that, under a four corners review of the affidavit, the affidavit presented by Agent Waggoner does not provide sufficient corroborating details to allow the issuing magistrate judge to independently determine probable cause. To bolster the defendant's position, defense counsel relied heavily upon the facts in United States v. Negro.[3]

---

[3] 181 F.3d 105 (6th Cir. May 20, 1999) (unpublished opinion). In Negro, the informant (the mother of the defendant's child), contacted an ATF Agent and informed them that her son, age seven, had told her that he had seen firearms at the defendant's residence while staying with the defendant. The defendant had three felony convictions. A search was conducted of the defendant's residence pursuant to a search warrant, which revealed that the defendant was in possession of ten firearms. The defendant moved to suppress the evidence seized during the search claiming that the search warrant lacked sufficient indicia of probable cause. The defendant's motion was denied and the Sixth Circuit affirmed on appeal. The affidavit in Negro sets forth facts as told by the mother (informant), as well as those facts provided by the child to the ATF Agent. The affidavit also states that the Agents verified the defendant's address, as provided by the informant, vehicle registration, and the defendant's criminal history; and corroborated the child's allegations by speaking with the child and the child's counselor regarding the child's history for truthfulness.

7

Defense counsel contended that, unlike in <u>Negro</u>, there is no information in the affidavit in the present case to show that any steps were taken to verify the veracity of the defendant's daughter. While counsel agreed with the Court that the "totality of the circumstances" test is the controlling standard in determining probable cause for search warrants, counsel nonetheless argued that because the affidavit in this case is based on the hearsay information of an 8 year-old child, that independent corroboration of the daughter's allegations was needed in order to support a finding of probable cause. Finally, defense counsel argued that the information contained in the affidavit relating to Ms. Miller's knowledge that the defendant had possessed firearms and ammunition in 2004 was insufficient to establish probable cause because that information had become stale.

The government, on the other hand, stated that the Agents did, in fact, interview the defendant's daughter and corroborate her allegations, as indicated in its written response [Doc. 13]. It further stated that while the affidavit was, likewise, intended to convey the same information, it acknowledged that the affidavit was "inartfully drafted" and, thus, was not explicitly clear on this point. The government maintained, however, that this information was actually presented to Magistrate Judge Guyton through oral testimony. The government nonetheless agreed with the Court that statements made in support of probable cause must be tape-recorded or otherwise placed on the record or made part of the affidavit.[4] <u>See</u> Fed. R. Crim. P. 41. It contended, however, that

---

[4] However, the Court notes that the Sixth Circuit recently held in <u>United States v. Hang Le-Thy Tran</u>, 433 F.3d 472, 482 (6th Cir. 2006), that the issuing judge may consider unrecorded but sworn testimony that supplements a duly executed affidavit in determining whether there is probable cause upon which to issue a search warrant. In other words, the Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information be given by "Oath or Affirmation" before a judicial officer. <u>Id.</u> The <u>Hang</u> Court did not, however, analyze or address Rule 41 and its requirements. Regardless, the government did not rely upon this case at the suppression hearing. Furthermore, because Agent Waggoner did not testify at the suppression hearing, as did the affiant in <u>Hang</u>, this Court has no evidence whatsoever that (1) Agent Waggoner even provided oral testimony to Magistrate Judge Guyton, much less (2) whether the testimony was

8

the informant's [Ms. Miller's] allegations were sufficiently supported by appropriate police investigation to establish probable cause, even withstanding the omission in the affidavit pertaining to the Agents' corroborating interview of the daughter. Furthermore, the government argued that because Ms. Miller had observed the defendant build and shoot firearms when they were married and had, most recently, seen Defendant in possession of firearms in 2004, this information made it more probable that the defendant was in possession of firearms on the date in question and, thus, further supported the daughter's allegations.

      In support of its contention that the informant is reliable and that her allegations were sufficiently supported by appropriate police investigation, the government argued that (1) the affidavit is based on information provided by a named informant [Ms. Miller], who is the former wife of the defendant, (2) the Agents interviewed Ms. Miller, who related that her 8 year-old daughter had observed the defendant place a long, black rifle in his bedroom closet, (3) Ms. Miller also informed the Agents that the defendant was a convicted felon and that while she was married to him, he built a rifle and pistol from parts, possessed a "tub" of ammunition, shot firearms and that she had, most recently, seen him in possession of firearms in 2004, (4) Ms. Miller made a sworn statement, under penalty of prosecution for perjury, attesting to the facts she provided to the Agents [Doc. 13-2], (5) the Agents did a check into the defendant's criminal history and found that he had numerous felony convictions, (6) the Agents further corroborated the defendant's criminal history by speaking with the defendant, who admitted that he was a convicted felon, (7) the Agents verified the defendant's residential address, provided to them by Ms. Miller, and (8) the Agents verified that certain vehicles were operated and/or registered to the defendant.

---

given under oath or affirmation.

9

Case 3:06-cr-00041-TAV-CCS   Document 16   Filed 07/07/06   Page 9 of 16   PageID #: 12

After carefully reviewing the four corners of the application and affidavit, this Court finds that there is no evidence in the record, nor was any proof advanced at the suppression hearing, to indicate that the Agents interviewed the defendant's daughter. While it would be convenient for the Court to consider the argument advanced in the government's brief that the Agents did interview the daughter and that the substance of that interview was presented to Magistrate Judge Guyton[5], it cannot. Not only is there no evidence in the record nor proof advanced at the suppression hearing that such information was provided as sworn testimony, but there is also no evidence nor proof that it was provided at all.[6] Thus, the Court cannot find, based on the record before it, that Magistrate Judge Guyton had before him evidence which would indicate that the Agents interviewed the defendant's daughter. Instead, the bulk of the information presented in the affidavit comes from the defendant's former wife, Johanna Miller, who contacted ATF Agents on March 23, 2006, and conveyed to them (1) information related to her by her 8 year-old daughter, and (2) information about Defendant, which was personally known to her by virtue of her previous marriage to Defendant.

As previously noted, a judicial officer may rely on hearsay evidence and hearsay evidence may provide the probable cause necessary for the issuance of a search warrant where a

---

[5] This Court believes that if it had before it evidence/proof that Agents had given sworn testimony to Magistrate Judge Guyton of the daughter's interview, either in affidavit form or by oral sworn testimony, probable cause for issuance of the search warrant would have clearly been established.

[6] At the suppression hearing, the government argued that the sentence in paragraph 3 of the search warrant affidavit [Doc. 13-2], which states, "She further informed that her father instructed her and her brother that they were prohibited from entering his bedroom closet as he keeps 'guns and dangerous stuff' inside," was inartful because it was intended to convey that the "[Daughter] further informed [the Agents]..." In other words, the government argued that this sentence conveys that the Agents did, in fact, interview the daughter. However, based on the sentences preceding and following this sentence, this Court is left with only one reasonable interpretation - that is, this sentence relates to the daughter "informing" Ms. Miller --- not the Agents.

substantial basis for crediting the hearsay evidence is presented. United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003); Sonagere, 30 F.3d at 53. As such, the veracity, reliability, and basis of knowledge of an informant are all relevant to the totality of the circumstances test, but the Court notes that they are not rigid categories. United States v. Allen, 211 F.3d 970, 972-73 (6th Cir. 2000). As the Sixth Circuit recently explained:

> [W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. The affidavit could state police corroborated significant parts of the informant's story. Or the affiant could attest "with some detail" that the informant provided reliable information in the past. Or there could be other indicia of the informant's reliability, such a detailed description of the what the informant observed firsthand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

United States v. McCraven, 401 F.3d 693, 697 (6th Cir. 2005).

Based on the totality of the circumstances, the Court agrees with the government that the affidavit submitted in support of the search warrant [Doc. 13-2] does state facts that would support an independent judicial determination that the informant, Johanna Miller, is reliable. The Court also finds that Ms. Miller's allegations are sufficiently supported by appropriate police investigation to establish probable cause, even withstanding the omission in the affidavit pertaining to the Agents' alleged corroborating interview of the daughter. Specifically, the Court finds sufficient indicia of the informant's reliability based on (1) the informant's [Ms. Miller's] willingness to disclose her name[7], (2) Ms. Miller made a sworn statement, under penalty of

---

[7] Where, as here, the informant's name is disclosed, the information is considered to have greater reliability and is more supportive of a finding of probable cause. United States v. May, 399 F.3d 817, 823 (6th Cir. 2005). This is largely because if the information were fabricated, it would subject a known person to criminal liability. Id.; see also Helton, 314 F.3d at 820. This reliability factor is enhanced herein because of Ms. Miller's being

11

prosecution for perjury, attesting to the facts she provided to the Agents, which is attached to the (affidavit) search warrant [Doc. 13-2] and was presented to the issuing magistrate judge, (3) Ms. Miller, as the defendant's former wife[8], informed the Agents that Defendant was a convicted felon and that she had observed the defendant build and shoot firearms when they were married and had, most recently, seen him in possession of firearms in 2004, and (4) Ms. Miller's description of her daughter's statement is rich in relevant detail.[9] Additionally, the affidavit sets forth facts indicating that the Agents in this case corroborated Ms. Miller's allegations,[10] to the extent that they conducted a criminal history check on the defendant, which revealed that the defendant was a convicted felon, and also talked to the defendant, who admitted the same. The affidavit also indicates that the Agents verified the defendant's residential address provided by Ms. Miller and registration information related to Defendant's vehicles.

In making the above findings, the Court notes that it was unpersuaded by the defendant's argument that in order for the affidavit in this case to be sufficient it must state that the Agents independently corroborated the daughter's allegations and established her veracity. Clearly, it would have better if the daughter had been interviewed, her allegations and veracity subjected to

---

specifically advised that any false statement would subject her to prosecution for perjury.

[8] Although mere companionship with an individual suspected of criminal activity does not satisfy the probable cause standard, such association is "part of the 'practical considerations of everyday life' which can be considered in determining whether there is probable cause." United States v. Padro, 52 F.3d 120, 123 (6th Cir. 1995) (quoting United States v. Wright, 577 F.2d 378, 380 (6th Cir. 1978)).

[9] Ms. Miller's description is rich in relevant detail because it describes the specific: (1) type of firearm [a "long, black rifle"] (2) location of the firearm [in Defendant's house], (3) location in Defendant's house [in the bedroom], (4) location in Defendant's bedroom [in the closet], and (5) instructions and prohibition given by Defendant to the children.

[10] Corroboration of innocent facts provided by an informant tends to show that the informant was providing accurate information. See United States v. Noda, 137 Fed.Appx. 856, 2005 WL 1506605, **6 (6th Cir. June 24, 2005); see also Gates, 462 U.S. at 243-44.

questioning, and such information placed in the search warrant affidavit or given as sworn oral testimony. However, the determination of probable cause does not lend itself to the application of "[r]igid legal rules," and no one decision may serve to provide a definitive basis upon which to rely inasmuch as "informant's tips, like all other clues and evidence...may vary greatly in their value and reliability." Negro, 181 F.3d at *4. In other words, while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, "those facts need not take any particular form." United States v. McCraven, 401 F.3d 693, 697 (6th Cir. 2005). "The affidavit could state that the police corroborated significant parts of the informant's story....Or there could be other indicia of the informant's reliability, such as...the willingness of the informant to reveal his or her name." Id. Independent corroboration of an informant's story is not necessary to a determination of probable cause, as long as the issuing magistrate judge can conclude independently that the informant is reliable. Id.; see also United States v. Allen, 211 F.3d 970 (6th Cir.), *cert. denied*, 531 U.S. 907 (2000); United States v. Pellham, 801 F.2d 875, 878 (6th Cir. 1986).

In the case before the Court, not only is the informant named, which is of great import as to informant reliability, but the magistrate judge also had before him "additional evidence [that] buttressed the informant's information." See United States v. Williams, 224 F.3d 530, 532-33 (6th Cir. 2000). Specifically, the Court finds that Magistrate Judge Guyton could reasonably have found that Ms. Miller's account of her daughter's statement was sufficiently reliable in that, not only was Ms. Miller's name disclosed, but she was also specifically advised of the potential for prosecution for perjury for false statements. Likewise, Ms. Miller's description of her daughter's account of personally observing a "long, black rifle" in Defendant's bedroom closet is consistent with Ms. Miller's own account of personally observing Defendant (1) build an AR-15 rifle and a .45 caliber

13

pistol from parts, (2) possess a "tub" of ammunition, and (3) shoot firearms when they were married. Ms. Miller also informed the Agents that she had, most recently, seen Defendant in possession of firearms in 2004.[11]  Finally, the Court also concludes that Magistrate Judge Guyton could quite reasonably have determined Ms. Miller's account of her daughter's statement to be credible, in part, because the daughter's version of events, including Defendant's alleged instruction and prohibition to the children to stay out of the closet because he keeps "guns and dangerous stuff" inside, seems like a reasonable action and statement by a father, who despite being a prior convicted felon, would nonetheless be concerned for his children's safety.  Furthermore, it seems reasonable for Magistrate Judge Guyton to accredit the statement that Defendant allegedly kept the rifle hidden in a closet, given Defendant's legal status as a prior convicted felon and the illegal nature of his possession of such a firearm.

Accordingly, the Court finds that the affidavit in this case contains sufficient indicia of the informant's reliability and sufficient particularized facts and factual circumstances to support the informant's knowledge.  Additionally, the affidavit is supported by independent investigative actions on the part of the ATF Agents to corroborate the informant's allegations, to the extent that the Agents corroborated Defendant's criminal history and verified Defendant's residential address and vehicle registration.  Thus, affording proper deference to the finding of probable cause, this Court finds that Magistrate Judge Guyton, given all the circumstances set forth in the affidavit [Doc. 13-2] before him, had a substantial basis for concluding that a search of Defendant's residence would uncover evidence of wrongdoing.

---

[11] While such information is arguably "stale," it nonetheless adds to the support for probable cause based on the daughter's "corroboration" by recent information regarding Defendant's possession of a firearm. See United States v. Henson, 848 F.2d 1374, 1381 (6th Cir. 1988), cert. denied, 488 U.S. 1005 (1989) (quoting "Where recent information corroborates otherwise stale information, probable cause may be found.").

Based on the foregoing, the Court recommends that the District Court deny Defendant Olivent's suppression motion on this basis.

b. *Search Warrant #2*

The affidavit and application for the second search warrant, issued on March 30, 2006, are attached as an exhibit to the government's written response to the defendant's suppression motion [Doc. 13-3]. Initially, the Court notes that because it has already found the first search warrant [Doc. 13-2] to be valid, the second search warrant [Doc. 13-3] is not "fruit of the poisonous tree."[12] Furthermore, the Court finds that Magistrate Judge Guyton did have probable cause to issue a second search warrant [Doc. 13-3], based on (1) the recovery of the rifle pursuant to the initial search warrant, (2) the recovery of numerous receipts for the purchase of firearms pursuant to the initial search warrant, and (3) information provided in the second search warrant affidavit, including Ms. Miller's statement that while married to the defendant that she witnessed him visit a certain firearms website [Doc. 13-3, A-3]. Thus, based on the foregoing, coupled with Defendant's concession that the validity of the second search warrant was contingent on the validity of the first search warrant, the Court recommends that the District Court deny Defendant Olivent's suppression motion on this basis.

---

[12] See note 1.

15

*c. Leon's Good Faith Exception*

Having found the affidavits at issue to support a finding of probable cause to issue the search warrants in this case, the Court finds it unnecessary to determine whether the good faith exception to an invalid warrant, as articulated in United States v. Leon, 468 U.S. 897 (1984), applies in this case.

### III.  CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant Jody Olivent's suppression motion [**Doc. 11** ] be **DENIED**.[13]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[13]Any objections to this Amended Report and Recommendation must be served and filed with the clerk of the court within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140 (1985).  The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).